IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CARLOS HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 2:21-cv-256-JTA |
| v. | ) | (WO) |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), the claimant, Carlos Harris ("Harris"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Harris's claim for a period of disability and Disability Insurance Benefits ("DIB"). The court construes Harris's brief in support of his Complaint (Doc. No. 9) as a motion for summary judgment and the Commissioner's brief in opposition to the Complaint as a motion for summary judgment. (Doc. No. 14.) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).

After careful scrutiny of the record and the motions submitted by the parties, the Court finds that Harris's motion for summary judgment is due to be DENIED, the

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

## I.   PROCEDURAL HISTORY AND FACTS

Harris was 39 years old at the time of his alleged disability onset date. (R. 26.)[2] He completed three years of college and previously worked as a case aide, user support analyst, software engineer, and military unit leader. (R. 39-41, 55-56.) He alleged a disability onset date of March 29, 2018, due to degenerative disc disease, back pain, severe migraines, traumatic brain injury, and post-traumatic stress disorder. (R. 18, 37, 76.)

On February 22, 2019, Harris protectively applied for a period of disability and DIB under Title II (42 U.S.C. §§ 401, *et seq*.). (R. 15.) This application was denied on May 9, 2019, and Harris requested an administrative hearing. (R. 15.) Following an administrative hearing, the Administrative Law Judge ("ALJ") returned an unfavorable decision on May 8, 2020. (R. 12-27.) Harris sought review by the Appeals Council and it denied his request. (R. 1-3.) Thus, the hearing decision became the final decision of the Commissioner.[3]

On September 20, 2021, Harris filed this civil action for judicial review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 9, 14, 19.) This matter is ripe for review.

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case and are designated as "R." (*See* Doc. No. 15.)

[3] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

## II.     STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner

for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB must prove that he is disabled. *See* 20 C.F.R. § 404.1505. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an

impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

### IV.   ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Harris met the insured status requirements of the Social Security Act through September 30, 2022. (R. 17.) The ALJ also found that Harris had not engaged in substantial gainful activity since March 29, 2018. (R. 18.) The ALJ further found Harris suffers from

5

the following severe impairments that significantly limit his ability to perform basic work activities: degenerative disc disease, migraines, obstructive sleep apnea, obesity, major depressive disorder, bipolar disorder, and post-traumatic stress disorder. (R. 18.) Nevertheless, the ALJ concluded that Harris's severe impairments do not meet or medically equal the severity of impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (R. 19.)

After consideration of the entire record, the ALJ determined that Harris retains the RFC to perform medium work[4] as defined in 20 C.F.R. § 404.1567(c), except

> … [he] can occasionally lift and carry fifty pounds and frequently lift and carry twenty-five pounds. Can sit for six to eight hours in an eight-hour workday, stand, and walk for six to eight hours in an eight-hour workday. Can never climb ladders, ropes or scaffolds or have exposure to hazards such as dangerous moving machinery or unprotected heights. Can have frequent stooping, crouching, and overhead reaching. Can perform simple routine repetitive work with occasional decision-making and occasional changes in the work setting with a reasoning level up to and including three, performed on a sustained bas[i]s, that is eight-hours a day, five days a week in two-hour increments with normal breaks in an eight-hour workday. Additionally, the claimant could have occasional contact with the public and co-workers.

(R. 20-21.) In accordance with this RFC and having the benefit of testimony from a vocational expert ("VE"), the ALJ determined that Harris was precluded from performing any past relevant work. (R. 26.) The ALJ also found that based upon Harris's age, education, work experience and RFC, there are jobs that exist in "significant numbers in the national economy" that he can perform, and thus he was not disabled as defined by the Act. (R. 26.) The ALJ further found that Harris could work as a hospital cleaner, hand packager, and warehouse laborer. (R. 27.) The ALJ concluded that Harris had not been

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R § 404.1567(c).

under a disability from March 29, 2018, through May 8, 2020, the date of the ALJ's decision. (R. 27.) The ALJ found that based on the application for a period of disability and DIB filed on February 22, 2019, Harris is not disabled under sections 216(i) and 223(d) of the Social Security Act. (*Id*.)

## V.   DISCUSSION

Harris raises two issues on appeal. (Doc. No. 9.) First, Harris argues the ALJ's RFC finding is not supported by substantial evidence because it is inconsistent with the ALJ's acceptance of the medical opinion of Robert Estock, M.D. ("Dr. Estock"), the state agency psychological consultant. Second, Harris argues the ALJ improperly discredited his migraine headaches.

In response, the Commissioner argues that the ALJ was not required to incorporate all of Dr. Estock's mental limitations into the RFC finding. (Doc. No. 14.) The Commissioner also argues that the ALJ properly considered Harris's subjective complaints regarding his migraines and articulated explicit reasons for discounting Harris's testimony. The Commissioner concludes that substantial evidence supports the final decision, and the proper legal standards were applied.

The Court addresses each argument below.

A.  RFC Assessment

The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the

7

claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). "The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* Social Security Ruling 96-6p (stating that the ALJ must treat the findings of state agency medical consultants as expert opinion evidence of non-examining sources).

The regulations governing claims filed on or after March 27, 2017, abandon the requirement that the ALJ must give "good reasons" for the weight given medical opinions and prior administrative medical findings. *See Nix v. Saul*, Case No. 4:20-cv-00790-RDP, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021). These regulations now direct the ALJ to evaluate the persuasiveness of each medical source using the following five factors: (1) supportability, (2) consistency, (3) length of relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 416.920c(c). The ALJ must explain in his decision how he considered the factors of supportability[5] and consistency[6] in his determination of overall persuasiveness of each source. *Nix*, 2021 WL 3089309, at *6; 20 C.F.R. § 416.920c(b)(2) ("[S]upportability . . . and consistency . . . are [t]he most important

---

[5] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." 20 C.F.R. § 416.920c(c)(1).

[6] "The more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

factors we consider . . . [t]herefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."). "The persuasiveness analysis should turn on whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with other evidence of record." *Podeszwa v. Kijakazi*, No. 3:21-CV-223-JTA, 2022 WL 4357434, at *7 (M.D. Ala. Sept. 20, 2022) (citation and internal quotation marks omitted). The ALJ is not required to explain how he considered the remaining factors unless he finds two or more medical opinions are equally well-supported and consistent with the record but are not exactly the same. *Gogel v. Comm'r Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *6 (M.D. Fla. Sept. 20, 2021).

In addition to assessing a claimant's medical evidence, the ALJ is responsible for determining a claimant's RFC. *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (citing 20 C.F.R. § 404.1546(c)). A claimant's RFC is an administrative finding as to the most the claimant can do despite his limitations and is based on all the relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238; 20 C.F.R. § 404.1545. "Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence." *Talton v. Kijakazi*, No. CV 20-00543-B, 2022 WL 822158, at *6 (S.D. Ala. Mar. 17, 2022) (citing *Flynn v. Heckler*, 768 F.2d 1273, 1274 (11th Cir. 1985)). If the ALJ's determination of the claimant's RFC is supported by substantial evidence, then the court cannot overturn the conclusion reached by the ALJ. *Shue v. Comm'r of Soc. Sec.*, 817 F. App'x 906, 908

(11th Cir. 2020) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); *see also* 42 U.S.C. § 405(g).

The initial agency denial of Harris's application for DIB includes a mental RFC assessment by Dr. Estock. (R. 70-71.) Dr. Estock opined that Harris had understanding and memory limitations yet could "understand and remember simple instructions and work procedures but will have more difficulty with detailed instructions." (R. 70.) Dr. Estock also opined that Harris had sustained concentration and persistence limitations. (R. 70.) He further opined that Harris's ability to carry out very short and simple instructions was "not significantly limited[;]" his ability to carry out detailed instructions was "moderately limited[;]" his ability to maintain attention and concentration for extended periods was "moderately limited[;]" his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances was "moderately limited[;]" and his ability to sustain an ordinary routine without special supervision and to work in coordination with or in proximity to others without being distracted by them was "not significantly limited[.]" (R. 70-71.) Dr. Estock remarked that Harris's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods was "not significantly limited." (R. 71.) Dr. Estock elucidated:

> [Harris] can carry out simple tasks but will have some difficulty completing complex ones. [He] should be able to concentrate and attend to simple tasks for 2 hours and will need all customary rests and breaks. [He] would benefit from a flexible schedule as 1-2 days of work per month may be missed due to mental condition.

(R. 71.) Based upon the RFC assessment, the state agency determined that Harris had the RFC to perform medium work. (R. 73.)

The ALJ discussed Dr. Estock's opinion in the administrative decision. (R. 25.) The ALJ did not address Dr. Estock by name, but noted

> the consultant opined [Harris] could understand and remember simple instructions and work procedures but would have more difficulty with detailed instructions. The consultant opined [Harris] could carry out simple tasks but would have some difficulty completing complex ones. Further, the consultant opined [Harris] should be able to concentrate and attend to simple tasks for two hours and would need all customary rests and breaks and benefit from a flexible schedule as one to two days of work per month may be missed. Additionally, the consultant opined contact with the general public should be casual (Exhibit 1A).

(R. 25.) The ALJ found Dr. Estock's opinion persuasive because

> it is supported by the longitudinal mental history that show[s] [Harris] was consistently alert and oriented with no acute distress ad [sic] normal mood and affect. Further, it is consisted [sic] that show intact judgment and insight with normal attention, concentration and focus (see Exhibits 2F, 3F, 4F, 5F, and 7F). Finally, it is consistent with [Harris's] work activity and attending school.

(R. 25.) The ALJ concluded Harris had the RFC to perform medium work, except he had certain mental limitations, including that he "[c]an perform simple routine repetitive work with occasional decision-making and occasional changes in the work setting with reasoning level up to and including three, performed on a sustained bases, that is eight-hours a day, five days a week in two hour increments with normal breaks in an eight-hour workday." (R. 21.) The ALJ did not address nor adopt Dr. Estock's opinion that Harris "would benefit from a flexible schedule as 1-2 days of work per month may be missed due to mental condition."

11

Harris's argument is unavailing.[7] Under the regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). The ALJ is "not required to articulate how he considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). In addition, an ALJ's RFC assessment need not "match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019). *See Rivera Misla v. Comm'r of Soc. Sec.,* No. 6:20-CV-1076-DCI, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021) ("[A]n ALJ need not adopt every part of an opinion that the ALJ finds persuasive."). Thus, as the Commissioner correctly argued, the ALJ was not obligated to adopt Dr. Estock's suggestion that Harris have a flexible schedule which permits him to miss 1-2 days per month.

Harris has not met his burden of demonstrating that the ALJ's decision is not supported by substantial evidence. The ALJ properly explained the supportability and consistency of Dr. Estock's opinion and considered it in determining Harris's RFC. Dr.

---

[7] The Court pretermits discussion of Harris's assertion that the second hypothetical posed to the VE included Dr. Estock's limitation regarding absenteeism. (Doc. No. 9 at 8-9.) The record simply does not support that assertion. (*Compare* R. 58 ("Hypothetical number two is the same as hypothetical number one. The only modification being that this individual would have *absences from the workstation on a daily basis*. The duration of these absence would be the sole discretion of this individual.") (emphasis added), *with* R. 71 ("[Harris] would benefit from a flexible schedule as *1-2 days of work per month* may be missed due to mental condition.") (emphasis added).) Harris's mischaracterization of the record does not warrant consideration by the Court.

Estock's suggestion that Harris "may" miss "1-2 days of work per month . . . due to [his] mental condition" (R. 71), is speculative and thus the ALJ was not required to give any weight to it. *See Gilbreath v. Comm'r of Soc. Sec. Admin.,* No. 2:20-CV-00487-AKK, 2021 WL 2779454, at *4 (N.D. Ala. July 2, 2021) (citations omitted) (finding that state agency psychologist's opinion that claimant "may be expected to miss 1 or 2 days of work per month" was "speculative" and "ALJ did not have to give any weight to the opinion"). Notably, Harris fails to point to any treatment records that suggest he would miss 1 or 2 days of work per month due to his mental issues. Further, the balance of Dr. Estock's opinion is incorporated into Harris's RFC as determined by the ALJ. In this case, the ALJ's decision clearly indicates that he considered the opinion of Dr. Estock, analyzed the supportability and consistency of that opinion, and sufficiently articulated the bases for his decision. Consequently, the Court finds no reversible error.

    B.  Testimony of Migraine Headaches

Harris argues the ALJ failed to properly evaluate his credibility regarding his migraine headaches. Harris complains the ALJ offered "only a single, paltry paragraph summarizing the dearth of [his] migraine treatment records." (Doc. No. 9 at 11.) Harris contends the ALJ improperly discredited his testimony regarding his migraine headaches and their limiting impact on his ability to work. Harris also contends the ALJ did not evaluate the medical evidence as a whole because no laboratory test can confirm the existence or severity of headaches. Harris concludes that the ALJ's analysis is not supported by substantial evidence.

Social Security Ruling ("SSR") 16-3p "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims . . . ." Soc. Sec. Ruling 16-3p, 82 Fed. Reg. 49462-03, 2017 WL 5180304 (Oct. 25, 2017). The new ruling eliminates the use of the term "credibility" from the sub-regulatory policy and stresses that the ALJ "will not assess an individual's overall character or truthfulness" but instead will "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the [ALJ's] evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . . ." *Id*. at 49463, 49467. "Whether before or after SSR 16–3p, an ALJ may choose to discredit a claimant's testimony about his or her symptoms." *Ring v. Berryhill*, 241 F. Supp. 3d 1235, 1252 (N.D. Ala. 2017), *aff'd sub nom. Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966 (11th Cir. 2018) (per curiam).

When evaluating a claimant's symptoms, a two-step process must be used. *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 703 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 82 Fed. Reg. 49462-03 at 49463). At step one, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, 82 Fed. Reg. 49462-03 at 49463-64. At step two, the ALJ must evaluate the intensity and persistence of the symptoms and determine the extent to which they limit the claimant's ability to perform work-related activities. *Id*. at 49464-66. In doing so, the ALJ must examine the entire case

14

record, including the objective medical evidence; the claimant's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the case record. *Id*. at 49464.

The ALJ also must consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms other than treatment; and (7) any other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms. *Id*. at 49465-66; *see* 20 C.F.R. § 404.1529(c)(3).[8]

The ALJ then must examine the claimant's statements about the intensity, persistence, and limiting effects of symptoms in relation to all other evidence and consider whether they are consistent with the record as a whole. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 81 Fed. Reg. 14166, 14170 (Mar. 16, 2016)); *see also* 20 C.F.R. § 404.1529(c)(4).

---

[8] In *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991), the Eleventh Circuit "articulated the 'pain standard,' which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.' " *Id*. (quoting *Holt*, 921 F.2d at 1223). "The Eleventh Circuit's pain standard is consistent with the parameters that SSR 16-3p sets forth." *Griffin v. Berryhill*, No. 4:15-cv-0974-JEO, 2017 WL 1164889, at *6 n.10 (N.D. Ala. March 29, 2017).

During the administrative hearing, Harris testified that "constant migraine headaches" are one of the "main things" that prevent him from working. (R. 41, 52.) He also testified that he suffers from migraines three to four times a week, they last from eight to sixteen hours, it takes him approximately three hours to recover from a migraine, and the migraines are triggered by noise, lights or "no particular reason at all . . . ." (R. 41-42.)

In making the RFC finding, the ALJ stated that he considered all of Harris's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. 21.) The ALJ also stated that he considered the "medical opinion(s) and prior administrative finding(s) in accordance with the requirements of 20 CFR 404.1520c." (R. 21.) The ALJ then described the two-step process required by SSR 16-3p and discussed the evidence relating to Harris's symptoms. (R. 21.)

In regard to Harris's migraines, the ALJ considered Harris's testimony, noting:

> [Harris] contends he is unable to sustain work activity due to limitations stemming from his severe impairments. He testified that he has constant migraines, low back pain and memory loss. He testified that he experiences three to four migraines in a week that last about sixteen hours. He testified that light and noise exacerbates [sic] his migraines.

(R. 21.) The ALJ noted that Harris "sought treatment for migraine headaches." (R. 22.) The ALJ also noted that:

> [Harris] reported that he was exposed to explosions with loss of consciousness causes [sic] traumatic brain injury, which caused migraine headaches, but there was no inpatient treatment care. During this visit at Central Alabama Veterans Health Care System, [Harris] reported experiencing headaches every other day. A magnetic resonance of the brain

16

> performed on June 26, 2018 revealed no acute intracranial abnormalities (Ex. 2F/61). On March 28, 2019, [Harris] reported migraine headaches two to three times a week. However, there were no abnormalities observed (Ex. 3F/8).

(R. 22.) The ALJ further noted that Harris's daily activities are "not limited to the extent one would expect given the complaints of disabling symptoms and limitations." (R. 25.) The ALJ considered that Harris testified "regarding work activity after the alleged onset date" and "reported that he prepare[s] meals, does the laundry, performs other household chores, shops in stores, drives, reads and plays video games." (R. 25.) The ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that [Harris's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Harris's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 21.)

The Court finds no reversible error in regard to the ALJ's consideration of Harris's testimony of debilitating migraines. Harris "must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam). Harris has failed to carry his burden. The ALJ relied on Harris's medical records to find that his statements were inconsistent with the record. The records alone, described in detail above, constitute substantial evidence supporting the ALJ's decision to discount Harris's subjective statements. The ALJ's decision also discusses Harris's daily activities which are inconsistent with his subjective complaints about debilitating migraines and their effect on his ability to work. Harris reported having migraine headaches two to three times per week, but in the same medical visit reported that

he was working as a personal trainer and attending school. (R. 456.) The medical evidence shows that Harris was prescribed medication for migraines and that no further treatment for the condition was provided. Given the objective medical evidence of record as a whole and Harris's daily activities, the ALJ did not err by concluding that Harris was not as limited by migraines as he alleged. Accordingly, the Court finds that substantial evidence supports the ALJ's decision and this Court declines Harris's invitation to reweigh evidence or substitute its own judgment for that of the Commissioner. *See Dyer*, 395 F.3d at 1210.

## VI.   CONCLUSION

After review of the administrative record, and considering all of the arguments, the Court finds the Commissioner's decision to deny Harris disability is supported by substantial evidence and is in accordance with applicable law. Accordingly, it is hereby

ORDERED as follows:

1. The claimant's motion for summary judgment (Doc. No. 9) is DENIED.

2. The Commissioner's motion for summary judgment (Doc. No. 14) is GRANTED.

3. The decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

DONE this 27th day of February, 2023.

/s/ Jerusha J. Adams
_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE